UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ANN MACALUSO,

        Plaintiff,

    v.                                   21-CV-865-LJV
                                        DECISION & ORDER

NEW YORK STATE DEPARTMENT OF
CORRECTIONS, *et al.*,

        Defendants.
_____

On July 28, 2021, the plaintiff, Ann Macaluso, commenced this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and 42 U.S.C. § 1983. Docket Item 1.  Macaluso, a former pharmacy employee at the Wende Correctional Facility ("Wende"), alleges that the defendants, the New York State Department of Corrections and Community Supervision ("DOCCS")[1] and three DOCCS employees, discriminated against her because of her sex and age and unlawfully retaliated against her.  *Id.*  On October 20, 2021, the defendants moved to dismiss the complaint.  Docket Item 10.  Macaluso responded to that motion on January 3, 2022, Docket Item 12, and the defendants replied on February 2, 2022, Docket Item 16.

For the reasons that follow, the defendants' motion is granted in part, and the remainder of the defendants' motion will be granted unless Macaluso files an amended complaint correcting the deficiencies noted below.

---

[1] DOCCS is incorrectly named in the complaint as the "New York State Department of Corrections."  *See* Docket Item 1.

## **FACTUAL BACKGROUND**[2]

At the time of the events alleged in the complaint, Macaluso was an employee in the Wende pharmacy.  Docket Item 1 at ¶¶ 13-26.  In 2018, Macaluso "was promoted to the position of pharmacy supervisor at [Wende]."  *Id.* at ¶ 14.  She remained in that position until she was demoted "back to pharmacist" in January 2019.  *Id.* at ¶ 19.

In September 2018, Robin Neal, the Deputy Superintendent of Health at Wende, "demanded that [] Macaluso grant [] Neal and other non-pharmacy officers of [Wende] access to the controlled substance[s] lockers."  *Id.* at ¶ 15.  Macaluso "refused to do this" and instead "informed Deborah Green," the Director of Pharmacy Services at Wende, about "Neal's demand."  *Id.* at ¶¶ 16-17.  Green "reiterated . . . that no non-pharmacy personnel are . . . allowed access to the controlled substance[s] locker."  *Id.* at ¶ 18.

In January 2019, Neal "directed" Kelly Ahern, the Director of Personnel at Wende, "to notify [] Macaluso that she was being demoted."  *Id.* at ¶ 19.  Ahern's "letter offered no details or facts to justify the demotion."  *Id.* at ¶ 20.  According to Macaluso, however, "her demotion was in retaliation for her refusal to grant [] Neal access to the controlled substances locker and for bringing [Neal's] demand to the attention of [Green]," who was "outside . . . Neal's chain of command."  *Id.* at ¶ 21.  Macaluso subsequently "was replaced as pharmacy supervisor by a male employee."  *Id.* at ¶ 22.

---

[2] In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff."  *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).

About four months after her demotion, Macaluso "complained to [] Neal that she was being discriminated against on the basis of her age and gender." *Id.* at ¶ 23. After that complaint, Macaluso "began to be written up for alleged violations of [DOCCS] policies." *Id.* at ¶ 24. This "culminated" in a September 9, 2019 "notice of discipline [] signed by" John Shipley, the Director of Labor Relations for DOCCS, which "sought termination of [] Macaluso's employment." *Id.* at ¶¶ 25-26. Macaluso "alleges that these 'disciplinary' actions were in fact retaliation for her complaints of discrimination, and also for her refusal to grant [] Neal access to the controlled substances locker and for bringing [] Neal's demand to the attention of [] Green." *Id.* at ¶ 27.

## **LEGAL PRINCIPLES**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

**DISCUSSION**

I.   **TITLE VII CLAIM**

Macaluso alleges that DOCCS violated Title VII by discriminating against her on the basis of sex.[3]  To state a *prima facie* claim of sex discrimination under Title VII, the plaintiff must show "(1) that she is a member of a protected class; (2) that she was qualified for employment in the position; (3) that she suffered an adverse employment action; and [(4) that she has] some minimal evidence suggesting an inference that the employer acted with discriminatory motivation." *Littlejohn v. City of New York*, 795 F.3d 297, 307 (2d Cir. 2015).  If the plaintiff meets her burden, the defendant is presumed to have unlawfully discriminated against her, and the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  *Id.* If the defendant makes that showing, the burden shifts back to the plaintiff to show that the defendant's stated reason is pretextual.  *Id.*

---

[3] Macaluso suggests that DOCCS also violated Title VII by discriminating against her because of her age.  *See, e.g.*, Docket Item 12-1 at 2 ("If [the d]efendants chose to demote . . . [Macaluso] because of her sex, age, and/or complaints, [their] actions violate the law, and they must be held accountable.").  But Title VII does not cover discrimination claims based on age, so this Court will not address that theory of Title VII liability any further.  *See Bornholdt v. Brady*, 869 F.2d 57, 62 (2d Cir. 1989) ("[Title VII] governs complaints relating only to discrimination on the basis of race, color, religion, sex, or national origin, and not discrimination on the basis of age.").

Additionally, Macaluso's complaint is not a model of clarity as to which claims are raised against which defendants.  This Court therefore assumes that Macaluso's Title VII claim is raised against DOCCS and her section 1983 claims are raised against the individual defendants.  *See Patterson v. County of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004) ("[I]ndividuals are not subject to liability under Title VII."); *Alke v. Adams*, 826 F. App'x 4, 6-7 (2d Cir. 2020) (summary order) ("[S]tate sovereign immunity preclude[s] suit against DOCCS in federal court" under section 1983.).

To state a viable claim, an employment-discrimination plaintiff must plead "enough nonconclusory factual matter to nudge her claim[s] across the line from conceivable to plausible." *Mandala v. NTT Data, Inc.*, 975 F.3d 202, 208 (2d Cir. 2020) (alterations and internal quotation marks omitted). More specifically, to defeat a motion to dismiss, an employment-discrimination plaintiff alleging sex discrimination under Title VII "need only give plausible support to a minimal inference of discriminatory motivation" behind an adverse employment action. *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 84 (2d Cir. 2015). And as relevant here, "an inference of discrimination [] arises when an employer replaces a terminated or demoted employee with an individual outside the employee's protected class." *Littlejohn*, 795 F.3d at 312-13; *see also Sapio v. Selux Corp.*, 844 F. App'x 456, 457 (2d Cir. 2021) (summary order) ("[A]n employment[-]discrimination plaintiff will ordinarily satisfy her 'minimal' burden to allege facts supporting an inference of discrimination by alleging her replacement by someone outside her protected class.").

Macaluso alleges that she was qualified for her position but was demoted and replaced by a male employee.[4] Docket Item 1 at ¶¶ 32-33. Ordinarily, that would suffice to raise a minimal inference of discriminatory motivation and therefore survive a motion to dismiss. *See Littlejohn*, 795 F.3d at 312-13. But Macaluso also says that she was demoted because of "her refusal to grant [] Neal access to the controlled substances locker and for bringing [Neal's] demand to the attention of [] Green," Docket Item 1 at ¶ 21, and she does not offer any other factual allegations suggesting that she

---

[4] Macaluso does not allege that any other adverse employment action violated Title VII. *See* Docket Item 1 at ¶ 31 (alleging that "[Macaluso] suffered an adverse employment action" when she "was demoted from her position").

5

was demoted because of her sex.  In other words, Macaluso explicitly alleges that her demotion was motivated not by impermissible sex discrimination but because of her workplace dispute with Neal over access to the controlled substances locker.

Although a Title VII plaintiff "need not plead a *prima facie* case, she must at least set forth enough factual allegations to *plausibly* support" the elements of her claim. *Mandala*, 975 F.3d at 209 (emphasis added).  And "for the purposes of [Rule] 12(b)(6) analysis, [a court] may not consider a particular allegation in isolation; instead [the court] must consider whether the 'factual content' in a complaint 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Franchino v. Terence Cardinal Cook Health Care Ctr., Inc.*, 692 F. App'x 39, 43 (2d Cir. 2017) (summary order) (quoting *Iqbal*, 556 U.S. at 678).  So while Macaluso's allegation that she was demoted and replaced by a male employee normally would be enough to "nudge her claim across the line from conceivable to plausible," *see Mandala*, 975 F.3d at 208 (alterations omitted), Macaluso's other allegations about the circumstances of her demotion nudge that claim right back.  *See Franchino*, 692 F. App'x at 43 ("Considering the replacement allegation in light of the rest of the complaint, any suggestion of discriminatory motivation is undercut by the allegations that [the plaintiff's co-worker] acted out of vindictiveness and self-preservation."); *see generally Jackson v. Marion County*, 66 F.3d 151, 153 (7th Cir. 1995) ("[A] plaintiff can plead [herself] out of court by alleging facts [that] show that [she] has no claim, even though [she] was not required to allege those facts.").

For those reasons, Macaluso has not stated a viable Title VII claim against DOCCS.

6

## II.  SECTION 1983 CLAIMS

In addition to her Title VII claim against DOCCS, Macaluso brings an equal protection retaliation claim against the three individual defendants under section 1983. Docket Item 1 at 5.  "To state a valid claim under 42 U.S.C. § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States."  *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere."  *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).  To establish liability against a government official under section 1983, "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'"  *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (citing *Iqbal*, 556 U.S. at 676).

### A.     Official-Capacity Claims[5]

"The Eleventh Amendment precludes suits against states unless the state expressly waives its immunity or Congress abrogates that immunity."  *Li v. Lorenzo*, 712

---

[5] The defendants moved to dismiss Macaluso's official-capacity claims under Rule 12(b)(1) as well as Rule 12(b)(6), arguing that this Court lacks subject matter jurisdiction over those claims because they are barred by the Eleventh Amendment. *See* Docket Item 10-1 at 16-17.  Whether Eleventh Amendment immunity is properly asserted on a Rule 12(b)(1) or a Rule 12(b)(6) motion to dismiss is an open question. *See e.g.*, *Ripa v. Stony Brook Univ.*, 808 F. App'x 50, 50 n.1 (2d Cir. 2020) (summary order) (noting that "[w]hether Eleventh Amendment immunity constitutes a true issue of subject matter jurisdiction or is more appropriately viewed as an affirmative defense has not yet been decided by the Supreme Court or this Court" (internal quotation marks

F. App'x 21, 22 (2d Cir. 2017) (summary order) (citing *CSX Transp., Inc. v. N.Y. State Office of Real Prop. Servs.*, 306 F.3d 87, 94-95 (2d Cir. 2002)).  A claim for money damages under section 1983 against a state official in his or her official capacity "is in effect a claim against the governmental entity itself."  *Lore v. City of Syracuse*, 670 F.3d 127, 164 (2d Cir. 2012) (citing *Monell v. Dep't of Social Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978)).  Because "New York has not waived its immunity, nor has Congress abrogated it," *Li*, 712 F. App'x at 22 (citing *Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38-40 (2d Cir. 1977); *Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990)), the Eleventh Amendment bars official-capacity suits for money damages against New York State and its officials in their official capacities, *see Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

Macaluso has sued defendants Neal, Ahern, and Shipley in their official capacities for damages under section 1983.  Docket Item 1 at 1.  But for the reasons stated above, those claims are barred by the Eleventh Amendment and therefore are dismissed.

## B.     Equal Protection Claim

"[T]he elements of a retaliation claim based on an equal protection violation under [section] 1983 mirror those under Title VII."  *Vega*, 801 F.3d at 91.  So "for a retaliation claim under [section] 1983 to survive a . . . motion to dismiss, the plaintiff

---

omitted)); *see also Shomo v. Dep't of Corr. & Cmty. Supervision*, 2022 WL 1406726, at *5 n.3 (S.D.N.Y. May 4, 2022) ("Whether [Eleventh Amendment immunity] is properly brought under Rule 12(b)(1) or 12(b)(6) is an unsettled question of law in this Circuit."). In any event, because this Court finds that Macaluso's section 1983 damages claims against the individual defendants in their official capacities are not viable, the precise nature of Eleventh Amendment immunity is not dispositive here.

must plausibly allege" that the "defendants acted under the color of state law[ and the] defendants took adverse employment action against [her] because [she] complained of or otherwise opposed discrimination." *Id.* "[F]or an adverse retaliatory action to be 'because'" of the plaintiff's activity, a plaintiff "must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Id.* at 90 (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013)).

To plausibly allege that retaliation was a but-for cause of adverse action, a plaintiff "must plead facts that give 'plausible support to a minimal inference' of the requisite discriminatory causality." *Marcus v. Leviton Mfg. Co.*, 661 F. App'x 29, 32 (2d Cir. 2016) (summary order). So for her section 1983 equal protection retaliation claim, Macaluso must plausibly allege that "the adverse action would not have occurred in the absence of the retaliatory motive." *Vega*, 801 F.3d at 91 (quoting *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 846 (2d Cir. 2013)); *see generally Lively v. WAFRA Investment Advisory Grp., Inc.*, 6 F.4th 293, 303 (2d Cir. 2021) (discussing but-for causation at the pleading stage). In other words, "[i]t is not enough that retaliation was a 'substantial' or 'motivating' factor in the employer's decision." *Id.* (citing *Nassar*, 570 U.S. at 360).

Macaluso has failed to plausibly allege that any retaliation occurred because of her complaints of or opposition to discrimination.[6] First, Macaluso says that her

---

[6] It is not entirely clear whether Macaluso alleges that the defendants retaliated against her for her age discrimination complaints, her sex discrimination complaints, or both. And whether the standard outlined in *Vega* permits a section 1983 equal protection retaliation claim based on age discrimination is also somewhat unclear. *See Fierro v. City of New York*, 2022 WL 428264, at *9 (S.D.N.Y. Feb. 10, 2022) (reasoning that "it could be the case that *Vega* intended to permit retaliation claims based on the Equal Protection Clause to be actionable only in cases where a plaintiff reported

demotion "was . . . retaliation for her refusal to grant [] Neal access to the controlled substances locker and for bringing [] Neal's demand to the attention of [] Green." Docket Item 1 at ¶ 38.  So by Macaluso's own accounting, her demotion was not because of her complaints about discrimination but instead was the result of her dispute over access to the controlled substances locker.  Because Macaluso has not alleged that her demotion resulted from any protected activity, she cannot raise an equal protection retaliation claim based on her demotion.

Macaluso's argument that she was threatened with termination after her discrimination complaints fares slightly better but still misses the mark.  Macaluso says that she "complained to [] Neal that she was being discriminated against" in "approximately May 2019."  *Id.* at ¶ 23.  And Macaluso says that about four months later, she received a "Notice of Discipline [] signed by [] Shipley on September 9, 2019," that "sought termination of [her] employment."[7]  *See id.* at ¶¶ 23-25.

"Temporal proximity can certainly provide indirect evidence of causation" between protected activity and alleged retaliation.  *See Febrianti v. Worldwide*, 2016 WL 502027, at *5 (S.D.N.Y. Feb. 8, 2016).  But other courts in this Circuit have dismissed

---

discrimination due to their membership in a suspect or quasi-suspect class" before concluding that "lawsuits alleging age . . . discrimination constitute protected activity" for a section 1983 equal protection retaliation claim).  In any event, because Macaluso has not pleaded sufficient facts suggesting a connection between any protected activity and the adverse action, her equal protection retaliation claim fails regardless of whether it is predicated on either or both of her alleged age or sex discrimination complaints.

[7] Macaluso also alleges that she "began to be written up for alleged violations of [DOCCS] policies" after her complaints of discrimination, *see* Docket Item 1 at ¶ 24, but she offers no further details about those disciplinary incidents.  So Macaluso cannot allege an equal protection retaliation claim based on those vague assertions of adverse employment actions.  *See generally Fierro*, 2022 WL 428264, at *9 (describing adverse employment actions).

retaliation claims with closer time gaps.  *See id.* (collecting cases); *see also Brown v. City of New York*, 622 F. App'x 19, 20 (2d Cir. 2015) (summary order) (affirming motion to dismiss because "[t]he time lapses between [the plaintiff's] protected activities and the alleged retaliatory acts—ranging from two months to several years—were simply too attenuated to establish that the alleged adverse employment actions were the product of a retaliatory motive absent other supporting factual allegations.").  Moreover, while "temporal proximity, without more, may be sufficient to suggest an inference of discrimination for purposes of a claim for [retaliation], temporal proximity, with less—that is, vague allegations of potential temporal proximity, eroded by a plaintiff's own factual allegations . . .—is insufficient to nudge [a] plaintiff's claims across the line from conceivable to plausible."  *Malcolm v. Ass'n of Supervisors & Administrators of Rochester*, 2021 WL 4867006, at *5 n.2 (W.D.N.Y. Oct. 19, 2021) (alterations and internal quotation marks omitted).

      Here, Macaluso offers only the attenuated gap between her protected conduct and the threatened termination to suggest that the defendants retaliated against her; she does not allege any other facts that would otherwise suggest impermissible retaliation.  On the contrary, Macaluso's detailed factual allegations in the complaint suggest that her firing was the culmination of a workplace dispute triggered by her disagreement with Neal about access to the controlled substances locker.  *See, e.g.*, Docket Item 1 at ¶¶ 15-20 (describing controlled substances locker incident), ¶ 27 (alleging that "these 'disciplinary' actions were in fact retaliation for her complaints of discrimination[] and also for her refusal to grant [] Neal access to the controlled substances locker and for bringing [] Neal's demand to the attention of [] Green").

In light of all that, Macaluso has not alleged a plausible equal protection retaliation claim based on her demotion or threatened termination.  *See Febrianti*, 2016 WL 502027, at *5 (finding that, "[i]n the absence of *any* other evidence of retaliation, . . . temporal proximity is not enough to nudge [the plaintiff's] claims across the line from conceivable to plausible" (emphasis in original) (internal quotation marks omitted)).

### C.     First Amendment Claim

In her response to the motion to dismiss, Macaluso also argues that "her [section] 1983 claims should properly be read as retaliation in violation of her [First] Amendment . . . rights, as well as a violation of [the] Equal Protection [Clause]."  Docket Item 12-1 at 19.  But beyond that cursory reference, Macaluso does not otherwise explain why her speech was protected or even recite the elements of a First Amendment retaliation claim.  And even setting that aside—and setting aside the fact that the words "First Amendment" appear nowhere in the complaint—any First Amendment retaliation claim is subject to dismissal for other reasons.

To establish a claim for First Amendment retaliation under section 1983, a plaintiff must show that (1) she engaged in constitutionally protected speech or conduct, (2) the defendants took adverse action against her, and (3) there was a causal connection between the protected speech or conduct and the adverse action.  *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009).  The Second Circuit "and the Supreme Court have long recognized that 'the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern.'"  *Shara v. Maine-Endwell Cent. Sch. Dist.*, 2022 WL 3452280, at *2 (2d Cir. Aug. 18, 2022) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006)).  "When acting

as an employer," however, "'the State has interests . . . in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general.'" *Piscottano v. Murphy*, 511 F.3d 247, 268-69 (2d Cir. 2007) (alteration in original) (quoting *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)).  "The problem in any case is to arrive at a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering,* 391 U.S. at 568.

"[I]n assessing the first prong of the retaliation test—whether a public employee's speech is protected—[a court] must consider 'two separate subquestions': (1) whether the employee 'spoke as a citizen rather than solely as an employee,' and (2) whether [she] spoke on 'a matter of public concern.'" *Shara*, 2022 WL 3452280, at *2 (quoting *Matthews v. City of New York*, 779 F.3d 167, 172 (2d Cir. 2015)).  "If the answer to either question is no," the inquiry ends there because the employee has not engaged in protected speech.  *Matthews*, 779 F.3d at 172.  "If, however, both questions are answered in the affirmative, [a] court then" considers whether the employer "had an adequate justification for treating the employee differently from any other member of the public based on the government's needs as an employer." *Id.*

Because her own allegations establish that Macaluso spoke as an employee and not as a citizen, her First Amendment claim is not viable.  "[T]he critical question" in determining whether an employee speaks as a citizen is "whether the speech at issue is itself ordinarily within the scope of an employee's duties." *Montero v. City of Yonkers*, 890 F.3d 386, 397-98 (2d Cir. 2018) (internal quotation marks omitted) (quoting *Lane v.*

*Franks*, 573 U.S. 228, 240 (2014)).  To answer that question, courts consider "'the nature of the plaintiff's job responsibilities, the nature of the speech, and the relationship between the two,' along with other contextual factors such as whether the plaintiff's speech 'was also conveyed to the public.'"  *Shara*, 2022 WL 3452280, at *3 (quoting *Ross v. Breslin*, 693 F.3d 300, 306 (2d Cir. 2012)).  Moreover, a public employee's speech "can be pursuant to" her "official job duties even though it is not required by, or included in, [her] job description, or in response to a request by the employer."  *Weintraub v. Bd. of Educ.*, 593 F.3d 196, 203 (2d Cir. 2010) (internal quotation marks omitted).

Macaluso says that her "complaint to her superiors about [the d]efendants['] unlawful attempt to access controlled substances is clearly protected by the First Amendment."  Docket Item 12-1 at 20.  But Macaluso's comments, which were made to the Director of Pharmacy Services at Wende, concerned her employment responsibilities at the Wende pharmacy—namely, other employees' access to the controlled substances locker.  That sort of speech, which is "part-and-parcel of [an] employee's concerns about [her] ability to properly execute [her] duties," is "pursuant to [Macaluso's] official duties" and therefore is employee rather than citizen speech.  *Shara*, 2022 WL 3452280, at *3 (internal quotation marks omitted) (quoting *Weintraub*, 593 F.3d at 203).  So Macaluso has not plausibly alleged a First Amendment retaliation claim based on her comments about the controlled substances locker.[8]

---

[8] To the extent that Macaluso raises a First Amendment retaliation claim regarding her complaints of sex or age discrimination, that claim likewise is not viable. "Speech that, although touching on a topic of general importance, primarily concerns an issue that is 'personal in nature and generally related to the speaker's own situation[]' . . . does not address matters of public concern."  *Jackler v. Byrne*, 658 F.3d 225, 236

14

## III.  LEAVE TO AMEND

For all the reasons stated above, Macaluso's complaint is subject to dismissal.[9] And Macaluso has not moved for leave, or otherwise asked, to amend her complaint. "While leave to amend under the Federal Rules of Civil Procedure is 'freely g[iven],' no court can be said to have erred in failing to grant a request that was not made." *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (quoting Fed. R. Civ. P. 15(a)).  This Court therefore need not give Macaluso leave to amend her complaint.

Nevertheless, if Macaluso can in good faith amend her complaint to correct the deficiencies noted above, she may file an amended complaint within 30 days of the date of this order.  *See Porat v. Lincoln Towers Cmty. Ass'n*, 464 F.3d 274, 276 (2d Cir. 2006) ("[T]his [C]ircuit strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6).").  Macaluso's official-capacity claims for money damages under section 1983, however, are dismissed without leave to amend because any amendment would be "futile."  *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

---

(2d Cir. 2011) (alterations omitted).  That is, "a complaint of 'system-wide discrimination' can raise a public concern, but where the complaint is 'personal in nature and generally related to the employee's own situation,' it is unprotected by the First Amendment." *Norton v. Breslin*, 565 F. App'x 31, 34 (2d Cir. 2014) (summary order) (alterations omitted) (quoting *Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 143 (2d Cir. 1993)). And Macaluso's complaints of sex or age discrimination are the sort of "quintessential employee grievance" that cannot form the basis for a First Amendment retaliation claim. *Id.*

[9] Because Macaluso's claims all are subject to dismissal on the grounds outlined above, this Court does not reach the defendants' argument that Macaluso's claims against some defendants also are barred because she has not plausibly alleged that those defendants were personally involved in any unlawful conduct.

## **CONCLUSION**

For the reasons stated above, the defendants' motion to dismiss, Docket Item 10, is GRANTED in part. Macaluso's official-capacity claims for money damages under section 1983 are dismissed without leave to amend. The remainder of the defendants' motion will be granted unless, within 30 days of the date of this order, Macaluso files an amended complaint correcting the deficiencies noted above. The defendants may answer, move against, or otherwise respond to any amended complaint within 30 days of its filing. If Macaluso does not file an amended complaint within 30 days, then her complaint will be dismissed and the Clerk of the Court shall close the case without further order.

SO ORDERED.

Dated: September 19, 2022
Buffalo, New York

     */s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE